10-1353-cr
United States v. Riggi

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 9ᵗʰ day of February, two thousand eleven.

PRESENT:  GUIDO CALABRESI,
          GERARD E. LYNCH,
                    *Circuit Judges*,
          J. GARVAN MURTHA,
                    *District Judge.*[*]

------------------------------------------------------------------

UNITED STATES OF AMERICA,
                              *Appellee*,

                    v.                                   No. 10-1353-cr

VINCENT RIGGI,
                              *Defendant-Appellant.*

------------------------------------------------------------------

FOR APPELLANT:       MARSHALL A. MINTZ, New York, New York.

FOR APPELLEE:        MARK LANPHER, Assistant United States Attorney (Katherine Polk Failla, on the brief), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

---

[*] Honorable J. Garvan Murtha of the United States District Court for the District of Vermont, sitting by designation.

Appeal from the United States District Court for the Southern District of New York (Harold Baer, Jr., *J.*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the sentence is AFFIRMED.

Vincent Riggi appeals from his sentence of 60 months' imprisonment imposed by the Southern District of New York (Harold Baer, Jr., *J.*) after he pled guilty to conspiring to distribute and possess with intent to distribute five grams and more of methamphetamine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). Riggi argues that: (1) the district court erred by using his post-plea disclosures to calculate his offense level; (2) the government breached its promise to make a motion pursuant to 18 U.S.C. § 3553(e); and (3) the sentence was procedurally and substantively unreasonable.

**I.  District Court's Use of Post-Plea Disclosures**

Riggi initially entered into a plea agreement with the government that stipulated that he was responsible for 50 to 200 grams of methamphetamine, which contributed to a total offense level of 29. The probation office used these drug quantity and offense-level figures in its presentence report ("PSR"), but it found prior convictions not previously known to the government that increased Riggi's Criminal History Category to V. The probation office thus calculated Riggi's Guidelines range to be 140 to 175 months' imprisonment and recommended a sentence of 108 months' imprisonment.

Riggi subsequently entered into a cooperation agreement that stated, among other things, that if Riggi provided substantial assistance in an investigation or prosecution then

the government would file motions pursuant to both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). "A motion under § 5K1.1 authorizes the sentencing court to depart below the applicable advisory guideline range in determining the advisory guideline sentence, and a § 3553(e) motion permits the court to sentence below a statutory minimum." United States v. Richardson, 521 F.3d 149, 158 (2d Cir. 2008) (internal quotation marks omitted). During the negotiation of the cooperation agreement, Riggi disclosed more facts about his involvement in the charged conspiracy, and based on these disclosures and information from other sources, the agreement recites that he agreed to distribute in excess of 1.5 kilograms of methamphetamine in and around the New York City area. The cooperation agreement expressly states that it "supersede[s the] prior written plea agreement."

In light of Riggi's post-plea disclosures, the probation office revised the PSR to state that Riggi was responsible for 1.5 kilograms of methamphetamine, instead of 50 to 200 grams, thus increasing his offense level to 35. The revised PSR calculated Riggi's Guidelines range as 262 to 327 months' imprisonment. After receiving the government's § 5K1.1 letter detailing Riggi's cooperation, the probation office recommended a sentence of 72 months' imprisonment.

At sentencing, the court asked whether defense counsel had any "unresolved problems with the presentence report, the new presentence report." Defense counsel said he did not "have any factual objections to any old or new report." Before imposing sentence, the court noted Riggi's Guidelines range of 262 to 327 months' imprisonment, and acknowledged the probation office's recommendation of 72 months' imprisonment. The court then commented

on a number of Riggi's mitigating factors, including his cooperation, his "100 percent compliance [with the conditions of his release] during this rather lengthy pre-trial period," his successful treatment for his addiction, his support of his dependents, and "a variety of other aspects . . . which are all pretty well on [Riggi's] side of the ledger." The court said that it nevertheless could not overlook his involvement in the possession and distribution of "a great deal of controlled substance" over the course of at least six or eight months, or his seven prior convictions. The court then sentenced him to 60 months' imprisonment.

On appeal, Riggi argues that the government was bound by the original plea agreement's stipulation that he was responsible for 50 to 200 grams of methamphetamine (and resulting offense level of 29). Riggi did not raise this argument below. To the contrary, defense counsel below explicitly stated that Riggi did not have "any factual objections" to the revised presentence report, which recited that Riggi was responsible for 1.5 kilograms of methamphetamine and had an offense level of 35. Accordingly, Riggi waived his right to raise this challenge on appeal. See United States v. Rizzo, 349 F.3d 94, 99 (2d Cir. 2003) ("[I]f a defendant fails to challenge factual matters contained in the presentence report at the time of sentencing, the defendant waives the right to contest them on appeal.").

In any event, Riggi's argument that the government was bound by the initial plea agreement fails. Plea agreements and cooperation agreements are interpreted according to principles of contract law. See United States v. Woltmann, 610 F.3d 37, 39 (2d Cir. 2010) (plea agreements); United States v. Gregory, 245 F.3d 160, 165 (2d Cir. 2001) (cooperation agreements). We have held that "[w]hen the parties to a contract enter into a new agreement

4

that expressly supersedes the previous agreement, the previous agreement is extinguished." Health-Chem Corp. v. Baker, 915 F.2d 805, 811 (2d Cir. 1990). That is what happened here. The cooperation agreement explicitly stated that it superseded the plea agreement, so the cooperation agreement extinguished the earlier plea agreement, along with its stipulated drug quantity and offense level.

This interpretation of how the agreements interact works no injustice on Riggi, who appears to have made a deliberate decision to revoke the first agreement for what he perceived to be a better agreement. Under the plea agreement, his Guidelines range was 140 to 175 months' imprisonment, and in no event could he receive a sentence lower than the five-year mandatory minimum. Under the cooperation agreement, his Guidelines range increased to 262 to 327 months' imprisonment, but he gained a chance at receiving a sentence below the five-year mandatory minimum if the government determined that he rendered substantial assistance and it filed § 5K1.1 and § 3553(e) motions. Indeed, entering into the cooperation agreement appears to have worked to his benefit. After the probation office received the government's § 5K1.1 motion, it reduced its sentence recommendation from 108 months' imprisonment to 72 months' imprisonment, despite the fact that Riggi's Guidelines range had increased.

Riggi further argues that U.S.S.G. § 1B1.8 requires the government to disregard admissions a defendant offers in the course of cooperation. But § 1B1.8 merely *permits* the government to *agree* to disregard such admissions, stating:

> Where a defendant agrees to cooperate with the government by
> providing information concerning unlawful activities of others,

and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

U.S.S.G. § 1B1.8(a). Moreover, U.S.S.G. § 1B1.8(b)(1) excludes from the operation of any such agreement information "known to the government prior to entering into the cooperation agreement." Because the information about increased drug quantity was included in the text of the very agreement on which Riggi relies, that information was necessarily "known to the government prior to entering into" that agreement. Therefore, Riggi cannot benefit from § 1B1.8(a), regardless of the merit or lack of merit of his claim that language in the agreement invokes that section.

The government could certainly have handled the case more carefully than it did. When Riggi entered his plea, the district court carefully inquired of Riggi to ensure that he understood the terms on which he was pleading guilty. When he entered a new agreement that expressly superseded the initial plea agreement, the better practice, in order to eliminate any issue about Riggi's understanding of the new agreement and its relation to the prior agreement, might well have been to ask the district court to conduct a similar inquiry. Nevertheless, for the reasons stated above, the sentencing court's use of Riggi's post-plea disclosures provides no reason to vacate or remand his sentence.

**II.  Section 3553(e) Motion**

Riggi next argues that the government breached its promise to file a § 3553(e) motion. The cooperation agreement promised that in return for substantial assistance the government

6

would file both a § 5K1.1 motion and a § 3553(e) motion. Before sentencing, the government represented that Riggi had provided substantial assistance, and it filed a § 5K1.1 motion, but not a § 3553(e) motion, apparently due to an oversight. The court, which in the absence of a § 3553(e) motion lacked authority to sentence Riggi to less than the statutory mandatory minimum sentence of five years' imprisonment, see Melendez v. United States, 518 U.S. 120, 130 (1996), sentenced Riggi to five years' imprisonment. Riggi now argues, for the first time on appeal, that he is entitled to a new sentencing and that the government should be directed to file a § 3553(e) motion.

A remand for resentencing is no longer necessary, as a more limited remand has already occurred. When Riggi pointed out the government's mistake, the government sought a limited remand to clarify whether the district court had understood itself to be constrained by the statutory mandatory minimum in imposing sentence. On remand, the court stated that it had not felt so constrained and that at the time sentence was imposed, it had believed itself authorized to impose a term of imprisonment of less than 60 months. Indeed, the parties and the court appear to have operated under this (albeit incorrect) understanding at sentencing, because when Riggi and his counsel requested a non-incarceratory sentence (indicating their belief that the necessary motion had been made), neither the government nor the court suggested that such a sentence would have been beyond the court's power. Because the district court felt it was not bound by the statutory mandatory minimum, it is apparent that the court imposed the same sentence it would have imposed had the government made the proper motion. Accordingly, the government's failure to file the § 3553(e) motion did not

7

prejudice Riggi and provides no basis to vacate and remand his sentence.

**III. Procedural and Substantive Reasonableness**

Riggi makes a number of unpersuasive challenges to the reasonableness of his sentence. First, he argues that the district court made no findings regarding either the quantity of methamphetamine for which he was responsible or the resulting offense level. The record refutes that contention. When the sentencing court asked defense counsel if he had "any unresolved problems with the presentence report," which included the drug quantity calculation, defense counsel said he had none. Accordingly, the district court's written statement of reasons explicitly adopted the PSR which recited the drug quantity and offense level. Cf. United States v. Espinoza, 514 F.3d 209, 212 (2d Cir. 2008) (court may satisfy obligation to make specific factual findings to support a sentence enhancement under U.S.S.G. § 3B1.1 "by adopting the factual findings in the PSR, either at the sentencing hearing or in the written judgment," including in the statement of reasons).

Second, Riggi argues that it was unreasonable for the district court to decline to consider each and every mitigating factor he raised. But the district court explicitly considered a number of mitigating factors it regarded as most important, including Riggi's employment record, his recovery from addiction, and his support of his family. It was not required to address each and every one of Riggi's proposed mitigating factors. See Rita v. United States, 551 U.S. 338, 356 (2007); see also United States v. Cavera, 550 F.3d 180, 193 (2d Cir. 2008) (en banc); United States v. Fernandez, 443 F.3d 19, 33 (2d Cir. 2006).

Third, Riggi argues that his 60-month sentence created unwarranted disparity with his

8

three co-defendants, each of whom was sentenced to time served. See 18 U.S.C. § 3553(a)(6). But the disparity was not unwarranted, because the co-defendants were not similarly situated to Riggi. See Fernandez, 443 F.3d at 32. One co-defendant was characterized in a separate sentencing proceeding as merely a "customer," and the other two each had an offense level of 33, a Criminal History Category of I, and a Guidelines range of 135 to 168 months' imprisonment, as compared to Riggi's offense level of 35, Criminal History Category of V, and Guidelines range of 262 to 327 months' imprisonment. Riggi's claim that he presented more mitigating factors than they did is speculative.

Fourth, Riggi argues that the court failed to satisfy its § 3553(c) responsibility to "state in open court the reasons for its imposition of the particular sentence." But, as discussed above, the court stated its reasons for imposing the 60-month sentence: after commenting on a number of mitigating factors, it noted Riggi's involvement in the possession and distribution of "a great deal of controlled substance" over the course of at least six or eight months and his seven prior convictions. The court did not need to say more to satisfy its § 3553(c) responsibilities.

To the extent that Riggi claims his sentence is substantively unreasonable, we are unpersuaded. Given the seriousness of Riggi's crime, which lasted for six to eight months and involved a substantial quantity of drugs, as well as Riggi's long criminal record, this is not one of those "exceptional cases" where we must set aside the 60-month sentence – which was more than 200 months below the bottom of the applicable Guidelines range, and 80 months below the bottom of the range calculated before he disclosed his additional criminal

conduct – because it "cannot be located within the range of permissible decisions." <u>Cavera</u>, 550 F.3d at 189 (internal quotation marks omitted).

We have considered Riggi's remaining arguments and find them to be without merit.

For the foregoing reasons, the sentence is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court