**UNITED STATES of America,**
**Appellee,**

v.

**Federico GIOVANELLI, Defendant–**
**Appellant.**

**Docket No. 04–5763–CR.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 19, 2006.

Decided: Sept. 27, 2006.

John M. Hillebrecht, Assistant United States Attorney, for Michael J. Garcia, United States Attorney for the District of New York (Celeste L. Koeleveld, of counsel), for Appellee.

Vivian Shevitz (Jane Simkin Smith, of counsel), South Salem, N.Y., for Defendant–Appellant.

Before CALABRESI, POOLER, and B.D.PARKER, Circuit Judges.

PER CURIAM.

This case requires us, *inter alia*, to resolve a question on which a panel of this Court has yet to speak, namely, whether

United States Sentencing Guidelines ("U.S.S.G.") § 2J1.2 should apply to a conviction for obstruction of justice under 18 U.S.C. § 1503 where the conviction is based, not on actual obstruction, but rather on an "endeavoring" theory. That is, should U.S.S.G. § 2J1.2—which applies when "the offense involved obstructing the investigation or prosecution of a criminal offense"—apply where a defendant is convicted for endeavoring, unsuccessfully, to obstruct justice? For reasons stated herein, we answer in the affirmative.

## DISCUSSION

In 2004, Defendant–Appellant Federico Giovanelli ("Giovanelli") was tried before a jury in the United States District Court for the Southern District of New York, with Judge Rakoff presiding. The indictment charged Giovanelli with eighteen separate counts, including one count for conspiracy under 18 U.S.C. § 371, the object of which was to obstruct justice in violation of § 1503, and two counts for "endeavoring" to obstruct justice in violation of § 1503. On May 14, 2004, after an 18–day trial, the jury acquitted Giovanelli of fifteen counts, but returned a verdict of guilty for the conspiracy count and the two obstruction of justice counts. Following trial, Judge Rakoff sentenced Giovanelli to 121 months' incarceration; on a *Crosby* remand, *see United States v. Crosby*, 397 F.3d 103 (2d Cir.2005), Judge Rakoff reduced the prison sentence to 90 months.

On appeal, Giovanelli challenges his conviction and sentence. In all, he raises four arguments: (1) that the obstruction of justice charges were not supported by sufficient evidence; (2) that the jury charge was defective; (3) that the government failed to "specify charges" and thereby violated Giovanelli's due process rights (or, as the government frames the challenge, that the government "constructively amended" or "improperly varied" the charges); and (4) that the district court incorrectly calculated the Guidelines range applicable to Giovanelli's conviction, and that Giovanelli's 90–month prison sentence is otherwise unreasonable. We consider each of these arguments in turn.

## I. Sufficiency of the Trial Evidence

■ A defendant challenging the sufficiency of trial evidence "bears a heavy burden," *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir.2003), and the reviewing court must "view the evidence presented in the light most favorable to the government, and ... draw all reasonable inferences in its favor," *United States v. Autuori*, 212 F.3d 105, 114 (2d Cir.2000). Accordingly, we will affirm the jury verdict unless "no rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt." *United States v. Schwarz*, 283 F.3d 76, 105 (2d Cir.2002).

■ In this case, Giovanelli was convicted pursuant to the "omnibus clause" of 18 U.S.C. § 1503, which states:

Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The omnibus clause "makes criminal not just success in corruptly influencing the due administration of justice, but also the 'endeavor' to do so." *United States v. Aguilar*, 515 U.S. 593, 610, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995) (Scalia, J., dissenting).

■ Although § 1503's "endeavor" language is potentially sweeping in its breadth, the Supreme Court in *Aguilar*

recognized the need to "place metes and bounds on the very broad language of the catchall provision." *Id.* at 599, 115 S.Ct. 2357. To convict under an "endeavoring" theory, the prosecution must show that "the endeavor [had] the natural and probable effect of interfering with the due administration of justice"; but "if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct." *Id.; see also Schwarz,* 283 F.3d 76 (overturning a § 1503 conviction for insufficiency of evidence in light of *Aguilar* ). As the *Aguilar* Court explained, "[o]ur reading of the statute gives the term 'endeavor' a useful function to fulfill: It makes conduct punishable where the defendant acts with an intent to obstruct justice, and in a manner that is likely to obstruct justice, but is foiled in some way." *Aguilar,* 515 U.S. at 601–02, 115 S.Ct. 2357; *see also Schwarz,* 283 F.3d at 109 ("The thrust of [*Aguilar* ] is that § 1503 requires a specific intent to obstruct a federal . . . grand jury proceeding. Accordingly, the conduct offered to evince that intent must be conduct that is directed at the . . . grand jury and that, in the defendant's mind, has the 'natural and probable effect' of obstructing or interfering with that entity.").

Giovanelli relies on these interpretations of § 1503 to argue that his convictions cannot stand. First, he cites *Aguilar* and contends that the government failed to establish a sufficient "nexus" between his actions and the grand jury proceedings. Second, Giovanelli argues that, if the government failed to establish that he had an intent to violate § 1503, then the conspiracy charge must also be overturned.

■ The first of Giovanelli's contentions is meritless, and therefore both of his arguments must fail. The trial evidence, read in the light most favorable to the government, provides ample support for the following facts: (1) that Giovanelli was a long-time "Caporegime" or captain of the Genovese Organized Crime Family of La Cosa Nostra,[1] and that he was part of the Ruling Panel running the Family at the time of his allegedly obstructive acts in 1999; (2) that, at that time, a grand jury in New York was conducting a thorough investigation into another family of La Cosa Nostra, the Decavalcante Family, and that this investigation was going to lead to numerous arrests and indictments; (3) that Giovanelli obtained detailed information from the grand jury proceedings; and (4) that Giovanelli provided to targets of the investigation, including Vincent Palermo, then the Acting Boss of the Decavalcante Family, sensitive information, including (a) two separate written lists of the people to be indicted; (b) the charges on which they were to be indicted; (c) the names of some extortion victims who were being investigated; (d) the fact that a confidential informant was using concealed recording devices to tape-record Palermo; (e) information about the identity of that informant; (f) the fact that the Grand Jury investigation "involved cell phones" that the government was monitoring; (g) the fact that among the charges being considered by the grand jury were murders; and (h) the date on which the forthcoming arrests were to occur.

This evidence clearly supports the charge that Giovanelli's endeavor—namely, that of passing along that information to

---

1. According to the Federal Bureau of Investigation, "La Cosa Nostra"—literally translated into English as "our thing"—is "a nationwide alliance of criminals, linked through both familial and conspiratorial ties[,] that is dedicated to pursuing crime and protecting its members." Federal Bureau of Investigation, *Investigative Programs: Organized Crime,* http://www.fbi.gov/hq/cid/orgcrime/lcn/lcn.htm.

the targets of the investigation—had "the natural and probable effect of interfering with the due administration of justice." Further, the fact that Giovanelli was a high-ranking member of the Genovese Family, and the fact that he passed the information, *inter alia,* to the Acting Boss of the Decavalcante Family, supports the view that Giovanelli knew "that his actions [were] likely to affect the judicial proceeding." *Aguilar,* 515 U.S. at 599, 115 S.Ct. 2357. The evidence also indicates that Giovanelli purloined information from the grand jury, or at least knew that it had been unlawfully obtained. *Cf. United States v. Rosner,* 485 F.2d 1213, 1228 (2d Cir.1973). Though not itself an element of the specific § 1503 offense charged, this evidence adds support to the conclusion that he acted with the requisite knowledge and corrupt purpose to violate § 1503. Because Giovanelli then provided that information directly to the targets of the grand jury's investigation, his attempt to analogize his case to those of *Aguilar* and *Schwarz*—cases in which a defendant lied to a government investigator with no obvious connection to a particular grand jury proceeding—is unconvincing.

## II. The Jury Charge

Giovanelli's second contention on appeal is that, even if the evidence was sufficient to support the jury verdict, his convictions should nevertheless be overturned because Judge Rakoff's jury charge was defective. To support this argument, Giovanelli points to the fact that Judge Rakoff's charge failed to include the "natural and probable" language of *Aguilar*—even though, as Giovanelli concedes, Judge Rakoff did require the jury to find that Giovanelli had "the specific motive or purpose of obstructing or impeding the grand jury's proceedings" in order to convict.

■■ Under Rule 30(d) of the Federal Rules of Criminal Procedure, a party who has an objection to the charge given by the trial court "must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." FED. R. CRIM. PROC. 30(d). And a party does not satisfy this burden merely by submitting its own proposed language as part of a requested charge. *See, e.g., United States v. Crowley,* 318 F.3d 401, 411 (2d Cir.2003) ("[A] request for an instruction before the jury retires does not preserve an objection to the instruction actually given by the court.") (internal quotation marks omitted). Further, if a party "invited the charge or affirmatively waived his position," she has waived any right to appellate review of the charge. *Id.* at 414.

■ Giovanelli has waived his challenge to Judge Rakoff's jury charge. It was at Giovanelli's request—and with his approval—that Judge Rakoff omitted the "natural and probable" language from the jury charge. Both the government's proposed jury charge, and Judge Rakoff's draft jury charge, included the "natural and probable effect" phrase; only Giovanelli objected to the language. And when Judge Rakoff, responding to Giovanelli's objection, presented the parties with a revised draft jury charge that no longer included the "natural and probable effect" language, Giovanelli's counsel acknowledged that she was "happy about [that particular omission]." Thus, there was "approval or invitation" of the omission (indeed, both), *Crowley,* 318 F.3d at 411.

## III. The Indictment and Trial Presentation

Giovanelli's third argument is that "the [prosecution's] failure to specify charges violated Mr. Giovanelli's due process rights, and the 'roving' nature of the charges made it impossible to fairly de-

fend." Giovanelli also suggests that the government's indictment and "fluid" presentation at trial violated "vagueness principles," because "it forbids no specific or definite act and leaves open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against." *United States v. Powell*, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975).

■■■ The government, in contrast, understands Giovanelli to be making the following two arguments: (1) that the government's shifting presentation at trial amounted to a "constructive amendment" of the indictment which "so modif[ied] essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment," *United States v. Wallace*, 59 F.3d 333, 337 (2d Cir.1995); and (2) that the government improperly varied the charges, meaning that "the charging terms are unaltered, but evidence offered at trial proves facts materially different from those alleged in the indictment," *United States v. Helmsley*, 941 F.2d 71, 89 (2d Cir.1991).

Whether we view Giovanelli's claim more generally as one of due process and vagueness, or more particularly as one of constructive amendment and variance, the clam is unpersuasive. By May 2, 2003, nearly a full year before trial on April 19, 2004, the government gave Giovanelli's counsel all of its debriefing reports, including reports from every one of the government's cooperating witnesses. And by September 2003, defense counsel had obtained and reviewed the trial testimony of the same witnesses. Additionally, the government's indictment was broad and clearly covered all of the particulars that were later presented at trial. Moreover, in a letter to Judge Rakoff and defense counsel filed on December 19, 2003, four months before the commencement of trial, the government spelled out exactly what it expected to prove at trial. Given the appropriately broad language of the indictment, and the detailed specification of the Government's theory and evidence long before trial, Giovanelli's claim that the Government shifted theories or deprived him of fair notice has no merit.

## IV. *Giovanelli's sentence*

Giovanelli's final argument is that the district court improperly calculated the Guidelines range, and that the sentence is otherwise unreasonable. For the reasons that follow, we find Giovanelli's argument meritless, and affirm the district court.

### A. *Background*

In the Presentencing Investigation Report, the Probation Office applied to Giovanelli's offenses U.S.S.G. § 2J1.2, which in turn cross-references to § 2X3.1, the accessory-after-the-fact guideline. Under the Guidelines, whoever obstructs an investigation into a crime is treated as an accessory after the fact to that crime (in the instant case, homicide). Specifically, § 2X3.1 provides that such a cross-reference is required whenever "the offense involved obstructing the investigation or prosecution of a criminal offense." The government's proof showed that Giovanelli knew Palermo and others were being investigated for murder. His base offense level as an accessory, pursuant to § 2X3.1(a), was six levels lower than the offense level for the underlying offense (homicide), with a cap at level 30. Since the base offense level for homicide is level 43, see U.S.S.G § 2A1.1, Giovanelli's base offense level was capped at 30. Combined with Giovanelli's criminal history category

of III, his Guidelines range was 121 to 151 months.

At sentencing, Giovanelli argued that "the law can't criminalize merely passing along information" and reiterated that he "contest[ed] the [prosecution's] theory as we have all along." The government responded by asserting that "Mr. Giovanelli didn't just happen upon this information lying around somewhere. He intentionally targeted the [g]rand [j]ury," and obtained the information "by communicating in some fashion with the person who had access to the secret [g]rand [j]ury investigation." Judge Rakoff ultimately rejected Giovanelli's arguments. In so doing, Rakoff noted that "this is a case of a member of a vicious criminal organization invading knowingly the secret provinces of the grand jury and the prosecutor, for the purpose of passing it on so that obstruction and retaliation could be accomplished.... [T]hat is my view of the facts." After imposing a sentence of 121 months, Judge Rakoff also suggested an "alternative sentence," stating for the record that, if the Guidelines did not govern, Giovanelli would have been sentenced to 96 months instead. Judge Rakoff then meticulously explained how he had arrived at that alternative sentence.

On a *Crosby* remand, Judge Rakoff applied the same Guidelines range he had done originally, and then "look[ed] at all the other factors set forth in section 3553(a)." During this resentencing proceeding, Giovanelli repeated the argument that there was insufficient "evidence that he really targeted the grand jury...." Judge Rakoff responded:

[Y]ou are stuck with the fact that the government in the court's view did present very substantial evidence that Mr. Giovanelli intentionally obstructed justice and was intending to do so in connection with what he knew was a

murder investigation, etc., etc. I understand your eloquent arguments as to why you think I should find otherwise, but the government has convinced me again, as they did before, that what they claim the defendant did and intended is precisely what he did and intended. They have also convinced me, as they did before, of the role in organized crime that was the backdrop, if you will, to this activity.... But on the basic facts I think the government has it exactly right, and I think that, frankly, as I have now gone back and reviewed it—I don't think that the standard matters in this post-*Booker* world but for what it's worth, I would make those findings beyond a reasonable doubt. As I reviewed all this, voluminous though it be, I was more and more persuaded of the government's factual position.... I do make the findings beyond a reasonable doubt.

In the end, although Judge Rakoff considered all of the § 3553(a) factors and viewed Giovanelli's offense as one that "cuts at the very heart of any legal system," he nevertheless decided to cut Giovanelli's sentence down to 90 months imprisonment.

### B. The arguments on appeal

On appeal, Giovanelli makes two separate challenges to his sentence: (1) that the district court incorrectly calculated the Guidelines range because the cross-reference to the accessory-after-the-fact Guidelines should not apply, since Giovanelli *endeavored* to obstruct justice but was not proven to have *actually obstructed* justice; and (2) the sentence was otherwise unreasonable given, according to Giovanelli, the frailty of the trial evidence, the innocence of Giovanelli's conduct (i.e., merely passing information) and the fact that Judge Rakoff's real reason for imposing such a long

sentence was Giovanelli's "status" as a high-ranking member of the mafia.

The government responds by arguing, first, that the cross-reference to the accessory-after-the-fact Guidelines do properly apply to "endeavors" to obstruct justice, as all four of the Circuits to rule on this issue have held. *See United States v. Flemmi*, 402 F.3d 79, 97 (1st Cir.2005) ("For an individual to qualify for the section 2J1.2(c) enhancement, it is not necessary that he succeed in obstructing justice—he may simply endeavor to do so."); *United States v. Roche*, 321 F.3d 607 (6th Cir.2003); *United States v. Brenson*, 104 F.3d 1267, 1284 (11th Cir.1997); *United States v. Aragon*, 983 F.2d 1306, 1315 (4th Cir.1993). Second, the government argues that, if we agree that the district court properly calculated the Guidelines range, then the Court of Appeals has no jurisdiction, under 18 U.S.C. § 3782(a) and (b) to review the sentence for reasonableness. Alternatively, the government says that, even if the sentence is subject to reasonableness review, it is in fact reasonable.

## C. Discussion

### 1. The cross-reference to § 2X3.1

■ U.S.S.G. § 2J1.2 applies, and requires a cross-reference to § 2X3.1, whenever "the offense involved obstructing the investigation or prosecution of a criminal offense." The issue we must address is whether the language "involved obstructing" can be interpreted to include an "endeavor" to obstruct justice. Stated differently, did Giovanelli's offense—endeavoring to obstruct justice—"involve[ ] obstructing"?

We conclude that § 2J1.1 is indeed "meant to guide sentencing for all violations of 18 U.S.C. § 1503, whether on an obstruction or 'endeavoring' theory." *Aragon*, 983 F.2d at 1316. In doing so, we join our four sister Circuits that have con-

sidered the issue, and substantially concur in their reasoning. First, since § 2J1.2 "is the only section of the guidelines which covers 18 U.S.C.A. § 1503 (obstruction of justice)," it therefore "follows logically that endeavoring to obstruct justice, a *subpart* of 18 U.S.C.A. § 1503, is to be included within § 2J1.2." *Id.* at 1315. Second, this conclusion is "reinforced by the background commentary provided in U.S. S.G. § 2J1.2," *id.* at 1316, which explains that:

> [b]ecause the conduct covered by this guideline is frequently part of an *effort* ... to assist another person to escape punishment for an offense, a cross reference to § 2X3.1 (Accessory After the Fact) is provided. Use of this cross reference will provide an enhanced offense level when the obstruction is in respect to a particularly serious offense, whether such offense was committed by the defendant or another person. (Emphasis added).

*Id.* And "[a]s the underscored word 'effort' indicates, [§ 2J1.2] is meant to guide sentencing for all violations of 18 U.S.C.A. § 1503, whether on an obstruction or 'endeavoring' theory." *Id.* Third, in reaching our conclusion, we are comforted by the fact that the Supreme Court has narrowed the potentially sweeping breadth of § 1503's "endeavoring" language, so that it does no more than "make[ ] conduct punishable where the defendant acts with an intent to obstruct justice, and in a manner that is likely to obstruct justice, but is foiled in some way." *Aguilar*, 515 U.S. at 601–02, 115 S.Ct. 2357.

### 2. Reasonableness with the range

■ The Second Circuit has already made clear that Courts of Appeal have jurisdiction to review the reasonableness of a sentence within a properly calculated Guidelines range. *See United States v. Fernandez*, 443 F.3d 19 (2d Cir.2006)

(holding that, in light of language in the Supreme Court's *Booker* decision, the Court of Appeals does have jurisdiction to review the reasonableness of a below-Guidelines sentence); *see also United States v. Kane*, 452 F.3d 140, 143–44 (2d Cir.2006) (per curiam) ("Kane next contends that his sentence is unreasonable. The government urges that we lack jurisdiction to consider the reasonableness of Kane's sentence.... We recently rejected the government's jurisdictional argument in *United States v. Fernandez*, 443 F.3d 19, 25–26 (2d Cir.2006). Undeterred, the government contends that *Fernandez* is inconsistent with an earlier decision of this Court, *United States v. Colon*, 884 F.2d 1550 (2d Cir.1989), and entreats this panel to abide by *Colon*. We cannot do so.").

 Accordingly, we exercise jurisdiction and conclude that the sentence is in fact reasonable. In *Crosby*, 397 F.3d 103, we articulated two dimensions of post-*Booker* reasonableness review. First, we must review sentences for their substantive reasonableness, that is, whether the sentence length is reasonable in light of the applicable Guidelines range and other factors set out in 18 U.S.C. § 3553(a). *Crosby*, 397 F.3d at 114. Second, we review procedural reasonableness—essentially, whether the sentencing court complied with *Booker* (1) by treating the Guidelines as advisory only; (2) by actually considering the applicable Guidelines range (or ranges); and (3) by considering the other factors listed in § 3553(a). *Id.* at 115.

Under the *Crosby* standard, Judge Rakoff's sentence is clearly reasonable, both substantively and procedurally. He carefully explained the bases for his determination in two proceedings, and during resentencing he reduced the original 121-month sentence to 90 months' imprisonment—even though, in the first proceeding, he had suggested that the sentence would be 96 months if the Guidelines were determined to be non-mandatory. Giovanelli's arguments—that the sentence is unreasonable because he is 73-years-old and in poor health, because the witnesses at trial were unreliable, and because Judge Rakoff expressed bias toward him due to his membership in the Mafia—all fail.

## CONCLUSION

We have considered all of the Defendant–Appellant's arguments on appeal and find them to be without merit. The judgment of conviction entered against the Defendant–Appellant, and the sentence of 90 months' imprisonment, are therefore AFFIRMED.