of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34(d)(1).

UNITED STATES of America,
Appellee,

v.

Kofi YEVAKPOR, Defendant–
Appellant.

No. 06–4206–cr.

United States Court of Appeals,
Second Circuit.

March 25, 2008.

Paul D. Silver, Assistant United States Attorney (Glenn T. Suddaby, United States Attorney for the Northern District of New York, Richard S. Hartunian, Assistant United States Attorney, on the brief), Albany, NY, for Appellee.

Gene V. Primomo, Assistant Federal Public Defender, Albany, New York, for Defendant–Appellant.

PRESENT: Hon. RALPH K. WINTER, Hon. CHESTER J. STRAUB and Hon. ROBERT D. SACK, Circuit Judges.

## SUMMARY ORDER

Defendant–Appellant Kofi Yevakpor appeals from a judgment of conviction and sentence of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*), the defendant having been convicted of attempting to import more than one kilogram of heroin into the United States, 21 U.S.C. § 963, and possession with intent to distribute more than one kilogram of heroin, 21 U.S.C. § 841(a)(1), and having been sentenced principally to 120 months' imprisonment. Yevakpor advances four grounds on appeal: (1) that there was insufficient evidence presented at trial for a reasonable jury to find, beyond a reasonable doubt, that he knew he possessed and was transporting a controlled substance; (2) that the District Court exceeded its allowable discretion in admitting the expert testimony of New York State Police Investigator Samuel Mercado; (3) that the admission of the Mercado testimony, even if otherwise proper, constructively amended the indictment; and (4) that the District Court improperly instructed the jury on the issue of the requisite guilty knowledge to convict Yevakpor. We assume the parties' familiarity with the underlying facts and procedural history in this case.

■ The first basis for Yevakpor's appeal is his assertion that there was insufficient evidence relating to his knowledge of his possession and transportation of a controlled substance presented at trial for the jury to convict him of the two counts charged in the indictment. Although Yevakpor concedes that he possessed the suitcase in which the heroin was discovered, he argues that "there was no evidence connecting that possession with knowledge of what was hidden inside." Without specifying anything in particular, Yevakpor argues that the evidence supporting a finding of the requisite knowledge "was almost

entirely based upon circumstantial evidence and inferences drawn from the admission of other uncharged criminal conduct."

It is established that a defendant bears a "heavy burden" to overturn a conviction on the ground of insufficient evidence. *See United States v. Snow,* 462 F.3d 55, 61 (2d Cir.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 1022, 166 L.Ed.2d 770 (2007). "The burden is heavy, in part, because we view the evidence at trial in the light most favorable to the government, and we draw every inference in its favor. So long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the jury's verdict will stand." *Id.* at 61–62 (internal citation omitted). Where, as here, the defendant moves for a judgment of acquittal at the close of the government's case pursuant to Federal Rule of Criminal Procedure 29 but fails to renew that motion at the close of his defense, we review the sufficiency challenge for "plain error" or "manifest injustice." *See United States v. Finley,* 245 F.3d 199, 202 (2d Cir.2001), *cert. denied,* 534 U.S. 1144, 122 S.Ct. 1101, 151 L.Ed.2d 997 (2002).

The evidence presented at Yevakpor's trial was sufficient for a reasonable jury to find him guilty, beyond a reasonable doubt, of the two counts charged in the indictment. In addition to Yevakpor's admitted possession of the suitcase containing heroin, his companion in the car, Abbas Rahim, testified that Yevakpor made several incriminating statements once the Customs and Border Protection Officer began examining the suitcase, including "I'm in trouble" and "I'm finished; my life is done." In addition, the officer himself testified that the suitcase had an "overwhelming smell of mothballs," which he stated could serve as a smuggling technique to mask any odor associated with hidden contraband. Moreover, the jury was entitled to find implausible Yevakpor's testimony that an individual by the name of "Cool Down" gave him the suitcase, that Yevakpor planned to return the suitcase to Cool Down in New York, but that Yevakpor did not know where Cool Down lived. Although Yevakpor argues that the evidence presented at trial regarding his knowledge consisted of nothing more than circumstantial evidence and admissions of uncharged criminal conduct, we have observed that "[p]roof of knowledge may be, and often is, circumstantial." *United States v. Hastings,* 918 F.2d 369, 373 (2d Cir.1990) (rejecting defendant-appellant's argument that the government had presented insufficient evidence that he knowingly possessed a firearm because the only evidence was circumstantial). After reviewing the evidence and considering Yevakpor's arguments regarding their sufficiency, we reject Yevakpor's contention that there was insufficient evidence presented as to the element of knowledge for two charged crimes.

■ Yevakpor's second challenge to his conviction is that the District Court exceeded its allowable discretion in permitting Mercado to testify under Federal Rule of Evidence 702 because the jury did not need expert testimony to understand the origin and use of heroin. Furthermore, Yevakpor argues that, irrespective of his Rule 702 challenge, the District Court also violated Federal Rule of Evidence 403 by admitting the Mercado testimony because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice.[1]

---

1. Yevakpor also argues that, in the event that we accept his Rule 702 challenge, the Mercado testimony could not have been admitted as lay opinion testimony under Federal Rule of Evidence 701. We need not reach this issue because we conclude that the District Court did not err in admitting the Mercado testimony under Rule 702.

"Because the district court has broad discretion regarding the admission of expert testimony, we will sustain the district court's admission of the testimony unless it was manifestly erroneous." *United States v. Dukagjini*, 326 F.3d 45, 52 (2d Cir.2003) (internal quotation marks omitted). We have stated that "the operations of narcotics dealers are a proper subject for expert testimony under [Rule] 702 ... where the subject matter of the testimony is beyond the ken of the average juror." *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir.1991), *cert. denied*, 513 U.S. 829, 115 S.Ct. 101, 130 L.Ed.2d 50 (1994). In *Castillo*, we held that the district court erroneously admitted the testimony of the government's expert where the subject matter of that testimony consisted of topics within the expected knowledge of the average juror—such as the fact that drug dealers use scales to weigh drugs and that drugs may be kept in plastic bags or wrapped in tinfoil—and where an eye witness had already testified to those facts and their purposes. *See id.* at 1233. Although an expert may properly testify as to the meaning of drug-related codes or jargon, a district court fails in its "gatekeeping" function when such an expert strays beyond such topics to interpret "ambiguous words or phrases [where] there is no evidence that these terms were drug codes." *See United States v. Cruz*, 363 F.3d 187, 196–97 (2d Cir.2004).

Mercado testified about global heroin production, methods commonly used to transport heroin internationally, heroin values at the wholesale and retail levels and the origin of heroin seized from Yevakpor. While the facts to which Mercado testified cannot reasonably be regarded as lying within the "ken of the average juror," *Castillo*, 924 F.2d at 1232, we are troubled by the breadth of his testimony. It is difficult to see what most of the details to which Mercado testified, outlining the entire operation of the illicit heroin trade, have to do with Yevakpor's alleged role in the operation—that of a mere "mule," smuggling drugs from Canada to the United States. The irrelevant portions of his testimony might have suggested to the jury that Yevakpor was, or was suspected of, playing a larger role than he did. The relevant evidence of guilt in this case was overwhelming, however. We therefore do not think this error, if error it was, was prejudicial. *See Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

Further, Yevakpor does not argue that the Mercado testimony merely bolstered testimony provided by any witness. *See United States v. Cruz*, 981 F.2d 659, 663 (2d Cir.1992) (holding that a district court errs in admitting expert testimony in a drug trafficking case where its principal purpose is to bolster a lay witness's version of the facts). Moreover, unlike the expert challenged in *Dukagjini*, Mercado was not involved in the investigation of Yevakpor's case. *See Dukagjini*, 326 F.3d at 53–56 (observing that allowing an investigating case agent to testify as an expert "increases the likelihood that inadmissible and prejudicial testimony will be proffered"). Instead, Mercado merely reviewed the available evidence in preparation for his expert testimony at trial. Finally, we have repeatedly rejected the argument Yevakpor makes that a district court errs merely by admitting expert testimony that is based, in part, on otherwise inadmissible evidence. *See United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir.2000) (collecting cases), *cert. denied*, 532 U.S. 943, 121 S.Ct. 1405, 149 L.Ed.2d 348 (2001).

■ Yevakpor also challenges the Mercado testimony on the ground that, even if its admission was proper, the scope of the testimony constituted a constructive amendment of indictment. Specifically,

Yevakpor maintains that the jury was impermissibly "led to believe that Mr. Yevakpor was part of a larger plan to transport the controlled substance across the border and distribute it in the United States with a counterpart in New York City." As a result, Yevakpor argues that he was "exposed ... to a verdict of guilt based upon a conspiracy for which he was not charged" in the indictment. For support, Yevakpor relies upon the Mercado testimony, the government's summation referring to such testimony, and a jury instruction that the government must prove that Yevakpor "knowingly and deliberately associated himself with the crime in some way as a participant ..., not as a mere spectator...."

"An indictment has been constructively amended when the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment." *United States v. Rigas*, 490 F.3d 208, 225 (2d Cir.2007) (internal quotation marks and brackets omitted). We review *de novo* a constructive amendment challenge, "which is a *per se* violation of the Grand Jury Clause of the Fifth Amendment requiring reversal." *Id.* at 226 (footnote omitted). "Alternatively, a variance occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment." *Id.* (internal quotation marks and brackets omitted). A defendant alleging such a variance must show "substantial prejudice" to warrant reversal. *See id.*

Aside from his argument pertaining to the jury instruction on criminal association, Yevakpor identifies nothing in the jury charge that would have allowed the jury to convict him for conspiracy. Indeed, before the District Court, Yevakpor conceded that the District Court "specifically took out any jury instructions that

had to do with conspiracy." As to the criminal association instruction to which Yevakpor apparently did not object at trial, Yevakpor arguably invited such language after he testified that he had been given the suitcase by his friend Cool Down. While there was no drug conspiracy charge in the indictment, the District Court likely provided the criminal association instruction to avoid the possibility that the jury might find Yevakpor guilty merely by having *any* connection to criminal activity. As the instruction properly states, the jury was required to find that Yevakpor actually participated in the crimes charged, not that he was merely a spectator.

Moreover, Yevakpor identifies nothing in the government's summation or the Mercado testimony that arguably referred to an alleged conspiracy involving Yevakpor. While Mercado testified about the "trust value" that a drug "broker" would usually place in a so-called "mule," he never referred to Yevakpor and only spoke about drug trafficking operations generally based upon his own experience posing as an undercover drug dealer. Upon our review of the record, we cannot conclude that the District Court either constructively amended or created a variance in the indictment against Yevakpor.

■ Finally, Yevakpor contends that the District Court improperly instructed the jury about what the government was required to prove as to Yevakpor's guilty knowledge. On this element, the District Court instructed the jury as follows:

> To establish this element, the Government must prove that the defendant knew that it was narcotics he was bringing into the United States and that this was not due to carelessness, negligence or mistake. If you find the defendant did not know that he had narcotics, then you must find the defendant not guilty.

Yevakpor identifies nothing in this instruction that he believes was erroneous, but he argues that a "balanced instruction would have further allowed the jury to acquit if the defendant was found to be unaware of facts supporting the 'high probability' that drugs were in the [suitcase]." This language refers to a "conscious avoidance" charge, as do the cases on which Yevakpor relies in his brief. *See, e.g., United States v. Finkelstein,* 229 F.3d 90, 95 (2d Cir.2000). Before the District Court, Yevakpor argued—and the government agreed—that this charge should not be given to the jury. As a result, Yevakpor cannot argue on appeal that the District Court erred in omitting this charge. *See United States v. Giovanelli,* 464 F.3d 346, 351 (2d Cir.2006) ("[I]f a party invited the charge or affirmatively waived his position, [ ]he has waived any right to appellate review of the charge." (internal quotation marks omitted)), *cert. denied,* —— U.S. ——, 128 S.Ct. 206, 169 L.Ed.2d 145 (2007).

We have considered all of Yevakpor's arguments and have found them to be without merit. For the foregoing reasons, we AFFIRM the judgment of the District Court.