UNITED STATES of America,
Appellee,

v.

James JOHNSON, Defendant–
Appellant.

No. 06–2026–cr.

United States Court of Appeals,
Second Circuit.

April 15, 2008.

Todd Harrison, Assistant United States Attorney (Susan Corkery, of Counsel), for Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Brooklyn, N.Y., for Appellee.

David S. Hammer, New York, N.Y., for Defendant–Appellant.

PRESENT: WALKER, GUIDO CALABRESI, ROSEMARY S. POOLER, Circuit Judges.

### SUMMARY ORDER

Defendant–Appellant James Johnson ("Appellant") appeals from an amended judgment entered on April 25, 2006 in the United States District Court for the Eastern District of New York (Johnson, J.), following an order by this Court affirming his conviction but remanding the case for reconsideration pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). *See United States v. Burns*, 164 Fed.Appx. 45, 47 (2d Cir.2006). Appellant argues that the District Court's previously imposed sentence and its decision to adhere to the sentence previously imposed—life imprisonment—was both procedurally and substantively unreasonable. We assume the parties' familiarity with the procedural history, facts, and relevant issues on appeal.

The appellant, who was nineteen years old at the time of the crime, was convicted of a Hobbs Act conspiracy, as a member of a gang that committed a series of armed robberies over a two-month span, with a substantive count of felony murder. Prior to this crime spree, the appellant had no criminal history. The felony murder occurred when the appellant, fleeing after a robbery of a luncheonette and chased by the storeowner, turned and fired a single shot, hitting the store owner in the stomach. The store owner was taken to the hospital, where he died twelve days later.

The Guideline range for this type of felony murder is life imprisonment. U.S.S.G. § 2A1.1, Application Note 1. However, "[i]f the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted." U.S.S.G. § 2A1.1, Application Note 2(B). The Application Note advises that "[t]he extent of the departure should be based upon the defendant's state of mind (e.g., recklessness or negligence), the degree of risk inherent in the conduct, and the nature of the underlying defense conduct." *Id.*

At the first trial, after conviction, the District Judge (Korman, J.) determined that the murder was reckless, not intentional, and granted a one-level downward departure pursuant to U.S.S.G. § 2A1.1, Application Note 2(B). The District Judge sentenced the appellant principally to thirty years in prison. In support of the departure and the resulting sentence, the District Judge emphasized the youth of the accused, his lack of intent to kill, and the fact that if sentenced for the same crime in New York state court, he would be eligible for parole in twenty-five years, whereas in the federal system, he would never have a chance at parole if sentenced to life in prison. The District Judge concluded that "a life sentence is too harsh under the circumstances."

The appellant appealed the conviction and prevailed on a challenge under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The conviction was reversed, *see United States v. Thomas*, 320 F.3d 315 (2d Cir.2003), and a new trial was brought. A different District Judge (Johnson, J.) presided over the second trial. The appellant was again convicted of the same counts. This time, however, the District Judge imposed a dramatically higher sentence on the same set of facts[1]: life imprisonment. At sentencing, defense counsel urged the court to consider Judge Korman's reasons for sentencing the appellant, on the same set of facts, to thirty years imprisonment, including his finding that a downward departure was appropriate under U.S.S.G. § 2A1.1 Application Note 2(B), and his conclusion that life imprisonment was "too harsh under the circumstances." At the outset of the hearing, defense counsel moved to continue the proceedings in order to allow counsel to address the complex sentencing factors in writing, to study and submit recently obtained materials from the Bureau of Prisons suggesting that the appellant had begun to rehabilitate himself, and to allow the appellant to prepare a written statement on his own behalf. The motion was denied.

Defense counsel argued first that Judge Korman was correct to determine that the killing was not intentional and that a downward departure should apply. The District Court did not determine whether

---

1. The government argues that the facts were not the same, pointing to evidence that the appellant attempted to intimidate witnesses during the second trial. However, the District Court rejected this allegation when it declined to assess two additional points for obstruction of justice.

the killing was intentional and thus whether a downward departure was available, but the court mentioned the pernicious nature of the crime spree before stating that it would not grant the departure even if it were available. The decision not to give the departure, however, seemed principally to rest on the fact that someone had died, a factor that is common to every case governed by Application Note 2(B) to § 2A1.1.

> Everything you say might be true, but I do not see any reason to downwardly depart based upon that. I think about this shop owner.... They took his body back to Egypt to be buried. We stand here, the defendant, and you speak very eloquently for him.... I am sure [the prosecutor] will speak for the government eloquently, but I ask myself who speaks for the deceased? Nobody. He's gone. Although he's a changed person, the defendant, the lives and family of [the deceased], they will be changed forever.

*Trans. of Sent. before the Hon. Sterling Johnson, Jr.*, at 9–10, *United States v. Johnson*, No. 98–00860 (E.D.N.Y. July 16, 2004). Defense counsel continued to argue for a sentence along the lines that Judge Korman had imposed, but the District Judge ended the discussion abruptly and announced his sentence.

> Address it before the Court of Appeals. Mr. Johnson, you are now leaving the land of the hunter. You are going to go into a society where you will be prey. You took a life and you have to be punished for that. As I said before, when I have to sentence in a case like this I always care about the person who is not here and the family who is not here. I'm talking about the victim who will never be here again. You will be alive for how long you live and you'll be thinking about this moment and the mo-

ment that you pulled that trigger for the rest of your life.

*Id.* at 13. Defense counsel again referred to Judge Korman's dramatically lower sentence on the same set of facts, to which the District Judge responded: "He was originally sentence[d] to 30 years, he appealed and he won his appeal I[t] turned out to be a pyrrhic victory." *Id.* at 15. Reviewing these proceedings may leave one with the impression that the District Judge's decision to impose a life sentence ultimately rested on the simple fact that someone had died, the unspeakable tragedy of which demanded a sentence of life imprisonment and rendered moot a consideration of the other Section 3553(a) factors.

The appellant appealed both the conviction and the sentence. *See Br. Applnt. James Johnson*, 2005 WL 4864856 at *39 (arguing that "the judgment of conviction should be reversed and a new trial ordered. In the alternative, the matter should be remanded to the District Court for resentencing"). In support of resentencing, the appellant argued, *inter alia*, that the District Court erred by failing to consider and discuss: the 3553(a) factors, the availability of a downward departure, and Judge Korman's determination, on the same set of facts, that a downward departure was warranted and that a life-sentence was too harsh under the circumstances.

The appeal was resolved by summary order, which affirmed the conviction but remanded under *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). The order listed five arguments that the appellant raised for why "his *conviction* should be reversed." *See Burns*, 164 Fed.Appx. at 47 (emphasis added). The order discussed two of these arguments, and rejected the rest without discussion—including the argument that the "conviction should be reversed" because it "reflected judicial and

prosecutorial vindictiveness." *Id.* The order did not mention the appellant's arguments for resentencing.

We have noted that a panel, faced with an inevitable *Crosby* remand, may choose either to resolve the appellant's (non-*Booker*) challenges to the sentencing on the first appeal or defer consideration of the sentencing challenges until a (possible) appeal of the *Crosby* remand. *See United States v. Rubenstein,* 403 F.3d 93, 99 (2d Cir.2005) (conducting a review of the Guidelines calculation prior to a *Crosby* remand and noting that "[t]his Guidelines analysis does not, however, foreclose future reasonableness review [in the post-Crosby-remand appeal] of defendants' sentence on other grounds (including those enumerated in 18 U.S.C. § 3553)"). Nothing in *United States v. Williams,* 475 F.3d 468 (2d Cir.2007) alters this practice.

It is not clear, in context, whether the order intended to dispose of the appellant's challenges to the original sentencing or to defer consideration of those arguments until an appeal of the *Crosby* remand. Normally, this would not matter, because, first, a procedural deficiency in the original sentencing will typically either be cured or fully recur in the post-*Crosby* sentencing and, second, we review the substantive reasonableness of a *Crosby*-remanded sentence under the same standard that we review the original sentencing. *See id.* at 474. In all these scenarios, review of the post-*Crosby* sentencing will suffice to reach the pertinent issues. However, when, as here, the complaint is that the District Judge did not adequately state his reasons for imposing the selected sentence or did not adequately consider the availability of a downward departure, there can be no meaningful appellate review without an examination of the entire sentencing process.

On *Crosby* remand, defense counsel argued that: (a) Judge Korman's determination that the killing was unintentional was correct and requires discussion; (b) Judge Korman was correct to conclude that a life sentence was too harsh under the circumstances; and (c) the appellant's personal circumstances, including his lack of prior criminal record, his exemplary behavior in prison, his family life, his youth, and the peer pressure that led him to commit the crime warranted a lower sentence. In support of this last contention, counsel argued at length that the Supreme Court's intervening decision in *Roper v. Simmons,* 543 U.S. 551, 569, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (quoting a study stating that a lack of maturity and an undeveloped sense of responsibility are qualities that "often result in impetuous and ill-considered actions") recognized that youths have an undeveloped sense of responsibility, which can be a mitigating factor. The District Judge responded simply,

> I listened to your lawyer's plea and it was an eloquent plea. But lurking here before me is a voice that cannot be heard and that's the voice of the person who was shot and killed during this particular spree. I adhere to my original sentence and I have taken into consideration *Crosby* [and] the factors in 3553(a). The original sentence was life imprisonment, is that correct?

*Trans. of Sent. before the Hon. Sterling Johnson, Jr.,* at 7, *United States v. Johnson,* No. 98–00860 (E.D.N.Y. April 21, 2006). The District Judge later added that he "hear[d] [defense counsel's] argument about ... [his] sentence being different than Judge Korman. You are correct. It is different." *Id.* at 8. Although the District Judge was not required to say more on *Crosby* remand, the comments reinforce the impression that the life sentence reflected no more than a *quid pro quo* for the appellant's taking of another's life.

Under 18 U.S.C. § 3742(a), we may review sentences allegedly imposed in violation of law. *See United States v. Fernandez,* 443 F.3d 19, 26 (2d Cir.2006). We examine *de novo* a District Court's interpretation of the Sentencing Guidelines, and we evaluate its findings of fact for clear error. *United States v. Rattoballi,* 452 F.3d 127, 132 (2d Cir.2006). We review both Guidelines and non-Guidelines sentences for reasonableness, including sentences that District Courts have declined to alter following *Crosby* remand. *Williams,* 475 F.3d at 474.

Reasonableness review involves "first ensur[ing] that the district court committed no significant procedural error, such as ... failing to consider the § 3553(a) factors ... or failing to adequately explain the chosen sentence...." *Gall v. United States,* — U.S. —, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007); *accord United States v. Giovanelli,* 464 F.3d 346, 355 (2d Cir.2006) (per curiam).

Reasonableness review also requires us to "consider the substantive reasonableness of the sentence imposed." *Gall,* 128 S.Ct. at 597. In doing so, we "take into account the totality of the circumstances" and "give due deference" to the District Court's weighing of the Section 3553(a) factors. *Id.* at 597.

Appellant argues that the sentencing contained procedural error, because the District Judge "did not determine whether the murder of [the shop owner] had been pre-meditated or reckless, and did not explain why, in the absence of such a finding, he rejected Judge Korman's sentence of 30 years imprisonment." Although the decision whether to grant a downward departure lies within the discretion of the sentencing judge, a sentence is procedurally unreasonable if the court made "[a]n error in determining ... the availability of departure authority." *United States v. Seli-*

*outsky,* 409 F.3d 114, 118 (2d Cir.2005); *see also United States v. Valdez,* 426 F.3d 178, 184 ("[R]eview is available when a sentencing court misapprehended the scope of its authority to depart...."). Although there is little reason to suspect that the District Judge misapprehended his authority to downwardly depart, and although "we do not insist that the district court address every argument the defendant has made or discuss every § 3553(a) factor individually," *United States v. Villafuerte,* 502 F.3d 204, 210 (2d Cir.2007), in light of Judge Korman's decision to grant a downward departure on the same set of facts, the District Judge should have determined whether a departure was available and warranted, applying the factors outlined in Application Note 2(B) to U.S.S.G. § 2A1.1.

The second part of appellant's argument is that, in these circumstances, the District Judge should have explained in more detail his reasons for imposing a drastically higher sentence after retrial. "We have declined to articulate precise standards for assessing whether a district court's explanation of its reason for imposing a non-Guidelines sentence is sufficient...." *United States v. Pereira,* 465 F.3d 515, 524 (2d Cir.2006). But "in the course of imposing a sentence, the district court's statement of reasons must at least explain—in enough detail to allow a reviewing court, the defendant, his or her counsel, and members of the public to understand—why the considerations used as justifications for the sentence are 'sufficiently compelling [ ] or present to the degree necessary to support the sentence imposed.'" *United States v. Sindima,* 488 F.3d 81, 86 (2d Cir.2007) (quoting *Rattoballi,* 452 at 137) (internal citation omitted) (alteration in original).

In *Rita v. United States,* the Court underscored the vital importance of a judicial

statement of reasons, but recognized that "the appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." —— U.S. ——, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007). Although "[t]he law leaves much, in this respect, to the judge's own professional judgment," *id.*, there are many circumstances in which a fuller statement of reasons is required. For example, "[w]here the appellant or prosecutor presents nonfrivolous reasons for imposing a different sentence ... the judge will normally go further and explain why he has rejected those arguments." *Id.* Similarly, more should be said when "a party contests the Guidelines sentence generally under § 3553(a) ... or argues for departure." *Id.* Here, the defendant argued for a departure and presented several "nonfrivolous reasons for imposing a different sentence," including the youth of the accused, the brevity of his criminal behavior, the allegedly unintentional nature of the killing, and the fact that a different judge, viewing the same set of facts, had imposed a substantially lower sentence. *See e.g., Gall,* 128 S.Ct. at 601 (holding that "it was not unreasonable for the District Judge to view [the defendant's] immaturity at the time of the offense as a mitigating factor ... [and] consideration of that factor finds support in our cases"). In response to these nonfrivolous arguments, the District Judge should have said more.

It has been a longstanding principle of sentencing jurisprudence that when a judge decides to impose a higher sentence after retrial, the judge should take care to give a full explanation for that higher sentence. *See North Carolina v. Pearce,* 395 U.S. 711, 726, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) ("[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear"); *Texas v.*

*McCullough,* 475 U.S. 134, 140, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986) ("[When] the second sentencer provides an on-the-record, wholly logical, nonvindictive reason for the sentence ... *Pearce* ... require[s] no more...."). Even when, as here, the higher sentence is not the product of vindictiveness, a fuller explanation is appropriate in order to advance the goals that sentencing explanations are designed to serve.

The reason a district judge "must adequately explain the chosen sentence" is "to allow for meaningful appellate review and to promote the *perception* of fair sentencing." *Gall,* 128 S.Ct. at 597 (emphasis added). "Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust." *Rita,* 127 S.Ct. at 2468. Because two district judges sentenced the same appellant, on the same set of facts, to two very different sentences, there is heightened concern that the public, when reviewing the proceedings, may suspect that the sentencing decisions depended more on the divergent sensibilities of the District Judges than on the individual characteristics of the appellant and his crime. To combat this perception of unfair sentencing, and to promote the public trust, it is especially important for a second sentencer who settles on a drastically different sentence to state his reasons for the sentence in full, in a manner that evidences careful consideration of the defendant's arguments and all the Section 3553(a) factors.

Similarly, a judicial statement of reasons aids the rational development of the common law of sentencing, the hallmark of which is that like cases are treated alike.

By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. That being so, his reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors, can provide relevant information to both the court of appeals and ultimately the Sentencing Commission. The reasoned responses of these latter institutions to the sentencing judge's explanation should help the Guidelines constructively evolve over time, as both Congress and the Commission foresaw. *Id.* at 2469. When two judges treat two identical cases very differently, the rational development of the common law of sentencing is put to question. In the least, a careful explanation for the second sentence should be provided. The need for a fuller explanation is acute in this case, because the scant explanation the District Judge has given for the life sentence suggests that the voice of the deceased lurking before the District Judge may have silenced any consideration of the individual characteristics of the appellant and his crime.

We remand this case to allow the District Court to determine whether to adhere to the original sentence and to explain its reasons for whatever sentence it decides to impose. We do not suggest that the original sentence was the product of anything other than the sound judgment of the District Judge, or that the final sentence should necessarily differ from the one previously imposed. The substance of the final sentence is, as always, a matter within the sound discretion of the District Court. We do ask, however, that the District Court explain its decision, specifically by reference to the factors of Section 3553(a), and elaborate on its findings regarding the availability and propriety of a downward departure.

After the judgment is issued by the District Court, jurisdiction may be restored to this court by letter from any party, and the Clerk's Office of this court shall set an expeditious briefing schedule and send such proceeding to this panel for disposition. *See United States v. Jacobson,* 15 F.3d 19, 21–22 (2d Cir.1994).

Accordingly, the judgment of the District Court is VACATED and REMANDED for further proceedings.