# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3312
_____

United States of America

*Plaintiff - Appellee*

v.

DeMarcus George, also known as Daddy

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: October 16, 2023
Filed: April 4, 2024
[Unpublished]

_____

Before SMITH, Chief Judge,[1] LOKEN and COLLOTON,[2] Circuit Judges.

_____

PER CURIAM.

---

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

DeMarcus George pleaded guilty to conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c), and was sentenced to life imprisonment and a lifetime of supervised release. On appeal, George argues that his life sentence is substantively unreasonable. He also argues that the written judgment impermissibly varies from the district court's oral pronouncement at sentencing because the written judgment includes standard conditions of supervised release not announced at sentencing. We affirm George's sentence of life imprisonment but vacate that portion of the judgment imposing the standard conditions of supervised release and remand to the district court for a resentencing, limited to consideration of the standard conditions of supervised release.

## I. *Background*

On an unspecified date between September 2017 and February 2018, George picked up C.T., the six-year-old daughter of his girlfriend, from the home of C.T.'s babysitter and took her to an unknown location. Upon her return to the babysitter's home, C.T. experienced vaginal itching. The babysitter observed that C.T. had bumps on her vagina and needed medical attention. The babysitter "asked C.T. if anyone was bothering her down there. C.T. stated, 'my daddy.'" Presentence Investigation Report (PSR), at ¶ 11. C.T. called George "her 'daddy.'" *Id.* The babysitter contacted C.T.'s mother, who replied she would take C.T. to a doctor.

On February 13, 2018, C.T.'s mother took her to Arkansas Children's Hospital (ACH) due to vaginal discharge. C.T. tested positive for gonorrhea and human immunodeficiency virus (HIV). ACH doctors opined that C.T. became infected with the sexually transmitted diseases between November 2017 and February 2018. At that time, George was the boyfriend of C.T.'s mother. On June 19, 2018, C.T. reported to ACH with complaints of a fever and progressive rash. C.T. tested positive for chlamydia and syphilis. Doctors informed law enforcement that it was unlikely that a single individual infected C.T.

An investigation revealed that "George had consistent, uninterrupted contact with C.T. . . . from September 2017 to June 2018." PSR, at ¶ 13. Blood testing performed on samples from George that were seized pursuant to a warrant determined that George was positive for HIV. George disclosed to authorities that C.T.'s mother prostituted C.T. with his assistance and that he received payment for his help.

In an interview with law enforcement, C.T. stated that George would put his penis in her vagina, anus, and mouth. According to C.T., George advised her to keep silent. During a second interview, C.T. recounted that when she was at a hotel with George while her mother was at work, George would call Mario Waters, who would come to their hotel room. Upon Waters's arrival, George would leave. In George's absence, Waters would close the curtains and make C.T. remove her clothing. He would then put his penis in C.T.'s mouth and vagina. C.T. said that Waters would sometimes give George money. She described an occasion when George returned to the hotel room, held a gun to her head, and told her that he would kill her if she ever told anyone. Waters's blood and urine samples tested positive for gonorrhea and chlamydia.

The grand jury returned an indictment charging George and Waters with conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c), and sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1) and (c). Thereafter, George waived indictment and was charged by superseding information with conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c). George pleaded guilty pursuant to a plea agreement to the charge in the superseding information. In the plea agreement, the parties stipulated to George's base offense level and enhancements, as well as an anticipated Guidelines range of 210 to 262 months' imprisonment. The plea agreement expressly provided, "The parties understand that the Court is not bound by these stipulations." R. Doc. 95, at 5. The PSR prepared prior to sentencing noted that, absent the plea agreement,

George's "Guideline sentencing range may have been 360 months to life." PSR, at ¶ 69.

During an in-camera hearing held just before sentencing, the government informed the district court that the parties had agreed to recommend a sentence within the anticipated Guidelines range of 210 to 262 months' imprisonment. The government agreed to the recommendation because of George's cooperation in providing information and grand jury testimony about C.T.'s mother's involvement in the sex trafficking of C.T. George had also agreed to testify against C.T.'s mother at her trial, if necessary. The district court, however, disclosed its intent to sentence George to life imprisonment, stating:

> I plan to give Mr. George life in prison. And if you want to stand down and wait, I will wait and see if there's a trial on [C.T.'s mother] because she's pimping her daughter out, and if there is one, then I'll consider it. I am not going to sentence this man to 21 years or whatever it is before that woman is convicted and put away for life.

R. Doc. 117, at 3. The district court explained that although it appreciated George's cooperation, this was "one of the circumstances where the line is drawn in the sand." *Id.* According to the court, George could not "rape a 6-year-old girl and walk out of [the] courtroom thinking [he was] going to ever breathe the light of day unless . . . the mother is considered more culpable and is convicted and put away for a long time." *Id.* at 3–4. The district court instructed the parties to decide what they "want[ed] to do" but warned, "[I]f we proceed today, I don't give a damn about that [plea] agreement." *Id.* at 4. Despite the court's warning, the parties elected to proceed with sentencing.

At sentencing, the district court adopted the PSR after the parties lodged no objections. The district court calculated a Guidelines range of 235 to 293 months' imprisonment. George argued for a sentence within the parties' recommended

sentencing range of 210 to 262 months' imprisonment. The government requested a sentence of 262 months' imprisonment. The district court sentenced George to an above-Guidelines sentence of life imprisonment. In imposing the sentence, the court noted that George "had sex with a 6-year-old girl who was in his care repeatedly and gave her HIV. What life did he give to her?" R. Doc. 116, at 9. The court concluded it was "well within [its] discretion" to impose "the maximum allowed by law, which is life imprisonment," "given the seriousness of the offense, the nature and circumstances of the offense of pimping and having sex with a 6-year-old baby and giving her HIV." *Id.*

In the event that George was "ever let out for any reason at all," the court ordered a lifetime of supervised release. *Id.* at 10. The court inquired whether the parties would like it to "go through the conditions of supervised release," to which the government responded that the court "probably should." *Id.* The court then stated:

> I will order him to participate in sex offender treatment, which may include—well, the probation office will set the terms of that treatment. He'll also have to pay the 10-dollar co-pay for that. I am going to order him to mental health counseling as a condition of his supervision. He'll have to pay—what will happen, Mr. George, is a counselor will assess you and then will give you the treatment that you need and you'll have to pay a 10-dollar co-pay for that. As far as all the computer monitoring and all that, I am not going to assess all that. I'm going to order that probation provide the state of Arkansas with any information it needs to list Mr. George under the sex predator statutes and sex offender statutes and notification statutes.
>
> I'm going to order that Mr. George not possess any visual depictions, including photographs, film, video or other types of computer-generated images of any sexual acts. I'm going to order that Mr. George not be permitted to enter any type of adult book stores, strip clubs, adult sex-themed entertainment. I'm going to order that he not have any direct contact with any children under the age of 18, that he not go to or remain in any place where he knows that children under the age

of 18 are present including parks, schools, playgrounds, and childcare facilities.

I'm going to order him to participate in a substance abuse treatment program. I might have said that, but just to make sure. May include drug and alcohol testing, outpatient counseling, and residential treatment. I'm going to order him to abstain from the use of alcohol during the course of treatment. He'll have to pay the co-pay of $10 per session, and all of those co-pays are based on your ability to pay. I'm also going to order him to pay the 100-dollar special assessment. I'm not going to impose a fine and I am going to order him to cooperate in the collection of DNA. I think that's all the conditions I have.

*Id.* at 10–11. The court also ordered that George have no contact with C.T.

Defense counsel objected to imposition of a life sentence as "outside the advisory sentencing guideline range" and because of "the potential difficulties it will cause in other cases, not this case, but in the future." *Id.* at 12. The district court also noted that the sentence exceeded the Guidelines range and indicated that an objection on that additional issue would be preserved. *Id.* The district court overruled these objections.[3]

Thereafter, a written judgment was entered that included 13 standard conditions of supervised release not included in the district court's oral pronouncement of the sentence.

## II. *Discussion*

On appeal, George argues that his life sentence is substantively unreasonable. He also argues that the written judgment impermissibly varies from the district court's

---

[3]After George's sentencing, the district court also imposed a sentence of life imprisonment as to co-defendant Waters.

oral pronouncement at sentencing because the written judgment includes standard conditions of supervised release.

A. *Substantive Reasonableness*

George challenges only the substantive reasonableness of his sentence. *See United States v. O'Connor*, 567 F.3d 395, 397 (8th Cir. 2009) (bypassing review for procedural error when the defendant raised only a substantive-reasonableness challenge). He argues that the district court abused its discretion in varying upward and sentencing him to life imprisonment because the district court "gave significant weight to improper factors and failed to give proper weight to [his] cooperation in its sentencing analysis." Appellant's Br. at 8. Specifically, George argues that "the district court sentenced [him] to life imprisonment because [C.T.'s mother] had yet to be convicted, deemed more culpable, and sentenced to life imprisonment. Those facts, however, were not relevant to the [18 U.S.C.] § 3553(a) factors—which must be applied to the 'individual defendant' being sentenced." *Id.* at 12. George asserts that "the district court's consideration of those irrelevant factors caused it to give no weight to [his] cooperation with the government." *Id.*

We review the substantive reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (internal quotation marks omitted). A district court is not required to mechanically recite the § 3553(a) factors; instead, "it simply must be clear from the record that the district court actually considered the § 3553(a) factors in determining the sentence." *Id.* (internal quotation marks omitted).

Having reviewed the record, we hold that the above-Guidelines sentence of life imprisonment is not substantively unreasonable. First, as the plea agreement makes clear, the district court was not bound by the Guidelines range set forth in the plea agreement. *See* Fed. R. Crim. P. 11(c)(1)(B) ("[T]he plea agreement may specify that an attorney for the government will . . . recommend . . . that a particular . . . sentencing range is appropriate . . . (such a recommendation or request does not bind the court)").

Second, the district court's "comments show that the court considered relevant § 3553(a) factors, such as the seriousness of the offense." *United States v. Zayas*, 758 F.3d 986, 990 (8th Cir. 2014). In imposing George's sentence, the court focused not on the pending prosecution of C.T.'s mother but instead on George's own offense conduct. The court expressly stated that it was exercising its discretion to impose a life sentence on George "given the seriousness of the offense, the nature and circumstances of the offense of pimping and having sex with a 6-year-old baby and giving her HIV." R. Doc. 116, at 9. Although the district court did not expressly discuss George's cooperation with the government in prosecuting C.T.'s mother, the record shows that it was aware of the cooperation. The court heard arguments from the parties referencing the plea agreement and recommending a sentence in accordance with that plea agreement. During the in-camera hearing, the district court learned that the sentencing-range recommendation was driven by George's cooperation with the prosecution of C.T.'s mother but advised that this was "one of the circumstances where the line is drawn in the sand." R. Doc. 117, at 3. In other words, George's cooperation could not mitigate the seriousness of the offense. *See United States v. Fernandez*, 443 F.3d 19, 34 (2d Cir. 2006) ("Although [the district court] had the power, as long as the sentence imposed was reasonable, to reduce [the defendant's] sentence in light of 'non–5K cooperation' under 18 U.S.C. § 3553(a), [the court] was under no obligation to provide any such benefit."), *abrogated on other grounds by Rita v. United States*, 551 U.S. 338 (2007).

Finally, although the sentence is an above-Guidelines sentence, "[v]ery long prison sentences for particularly abhorrent conduct have been repeatedly upheld." *United States v. Demeyer*, 665 F.3d 1374, 1375 (8th Cir. 2012) (per curiam); *see also United States v. Davenport*, 910 F.3d 1076, 1083 (8th Cir. 2018) (affirming an 840-month sentence for a defendant convicted of sexual exploitation of a child and child-pornography offenses); *United States v. Spiotto*, 745 F. App'x 667, 669 (8th Cir. 2018) (unpublished per curiam) (affirming statutory maximum sentence of 720 months, "effectively a life sentence," based on the seriousness of defendant's crimes, where she sexually abused a three-month-old and 11-month-old and allowed one victim to remain with a co-defendant so he could rape her); *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (affirming sentence of 457 months and 10 days' imprisonment, "essentially equivalent to a life sentence," for sexual exploitation of a child, distribution of child pornography, and possession of child pornography with a 15-year-old victim); *United States v. Betcher*, 534 F.3d 820, 827–28 (8th Cir. 2008) (affirming a 750-year sentence for a defendant who "took numerous pornographic and erotic pictures of his two young granddaughters and their three girlfriends").

## B. *Written Judgment*

George also argues that the written judgment includes 13 standard conditions of supervised release as listed in U.S.S.G. § 5D1.3(c) that were not orally pronounced at his sentencing. As a result, he argues that the written judgment conflicts with the oral sentence and altered his sentence in violation of the Double Jeopardy Clause.

"[T]he sentence imposed—the sentence defining the requirements [the defendant] must satisfy while on supervised release and which our court actually reviews—is the sentence pronounced orally in court rather than on the later written form." *United States v. Walker*, 80 F.4th 880, 882 (8th Cir. 2023) (citing *United States v. Foster*, 514 F.3d 821, 825 (8th Cir. 2008) ("Where an oral sentence and the written judgment conflict, the oral sentence controls." (quoting *United States v.*

*Glass*, 720 F.2d 21, 22 n.2 (8th Cir. 1983)))). A district court's oral pronouncement of a defendant's "sentence affords the defendant an opportunity to object, raise concerns and challenges as to the sentence, and seek tailored conditions of supervised release limited to what is 'reasonably necessary' to meet sentencing objectives." *Id.* (quoting 18 U.S.C. § 3583(d)(2)).

Recently, we held that a district court's failure to orally advise a defendant at sentencing that the standard conditions of supervised release were being imposed required vacatur of that portion of the written judgment and commitment order imposing those standard conditions. *Id.* at 882–83. Our disposition did not foreclose any specific release conditions. Instead, we "remand[ed] to the district court for a resentencing, limited to the standard conditions and [a] third special condition" not included in the oral pronouncement. *Id.* at 882. We "ha[d] no doubt that the failure to specifically address the standard conditions of supervised release and the third special condition which relate[d] to the two special conditions that were orally pronounced was a matter of mere oversight." *Id.* This was because "it would be virtually impossible to supervise a defendant or verify compliance with the two special conditions that were orally pronounced without at least some of the standard conditions of supervised release being imposed." *Id.* On remand, we directed the district court to "determine in the first instance whether any standard conditions of supervised release, as well as the third special condition, are consistent with and necessarily included within the scope of the express conditions as pronounced at the initial sentencing." *Id.* At resentencing, the defendant could "object to any of the conditions that he fe[lt] should not be imposed upon him." *Id.* We advised that "[a]ny standard conditions of supervised release or the third special condition which may be reimposed as part of any oral pronouncement may then be incorporated into an amended and reconciled judgment and commitment order." *Id.* at 882–83.

*Walker* is substantially similar to the present case. Like the court in *Walker*, the district court enumerated certain special conditions of supervised release but did not

orally recite the standard conditions of supervised release. As we explained in *Walker*, it would be difficult for probation officers to enforce these special conditions without the standard conditions in place. *See id.* As a result, we vacate that portion of the judgment and commitment order imposing the 13 standard conditions of supervised release and remand to the district court for resentencing, limited to these standard conditions. *Id.* The district court must follow the same directive given to the district court in *Walker* in considering "whether any standard conditions of supervised release . . . are consistent with and necessarily included within the scope of the express conditions as pronounced at the initial sentencing." *Id.* at 882.

### III. *Conclusion*

Accordingly, we affirm George's sentence of life imprisonment but vacate that portion of the judgment imposing the standard conditions of supervised release and remand to the district court for a resentencing, limited to consideration of the standard conditions of supervised release.

––––––––––––––––––––––––––––––